**Date: March 4, 2022**
**The following is ORDERED:**



BY THE COURT:

_____
TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

SALEEM SHAIKH,                                     Case No. 19-80436-TLM
                                                                     Chapter 13
                         Debtor.

### ORDER REGARDING TURNOVER OF TAX REFUNDS AND
### SETTING FURTHER HEARING ON TRUSTEE'S MOTION TO DISMISS

Before the Court is the Trustee's Motion to Dismiss for failure to remit tax refund and delinquent plan payments.[1] After a hearing, for the reasons set forth herein, this Court finds that the Trustee's request that the Debtor must turn over more than he received in his 2020 income tax refund to avoid dismissal is denied. Put simply, a debtor cannot turn over money on property he never had in the first place.

---

[1] Trustee's Mot. to Dismiss, ECF No. 139.

## Background

Debtor Saleem Shaikh ("Debtor") filed an original petition for relief under Chapter 13 of the Bankruptcy Code on April 25, 2019.[2] His first amended chapter 13 plan[3] was originally confirmed on February 18, 2020.[4] That order was reversed and remanded for additional findings by the Bankruptcy Appellate Panel on November 23, 2020.[5] A second confirmation hearing was held on his first amended chapter 13 plan, resulting in confirmation of the plan on February 11, 2021.[6] The confirmed plan provided for payments of $695 per month for the first three months, and $745 per month thereafter.

The Debtor owed $1,291 to the Internal Revenue Service ("IRS") for 2019 (postpetition) income taxes. To avoid dismissal of his bankruptcy case, on March 2, 2021, the Trustee and the Debtor agreed to the entry of an order requiring Debtor to make payments to the IRS of $100 a month beginning March 28, 2021, until the 2019 taxes were paid.[7] For tax year 2020, Debtor was entitled to a refund for overpayment of taxes to the IRS in the amount of $3,625 plus interest,[8] as well as a refund from the Oklahoma Tax Commission ("OTC") of $207.[9] From this overpayment, the IRS set off $771.74 for taxes still owing for 2019.[10] The record is silent as to when the IRS took this action; however, it appears to be a transaction within the ordinary course of business of the IRS. There is no allegation that Debtor affirmatively authorized the offset or missed any of the payments to the IRS contemplated in the March 2, 2021 Order. The debt was simply paid off.

---

[2] ECF No. 1.
[3] ECF No. 23.
[4] ECF No. 75.
[5] ECF No. 106.
[6] ECF No. 123.
[7] Agreed Order regarding Mot. to Dismiss, ECF No. 128.
[8] Debtor's Obj. to Trustee's Mot. to Dismiss Case, ECF No. 148.
[9] Trustee's Resp. to Debtor's Obj., ¶ 9, ECF No. 149.
[10] Debtor's Obj. to Trustee's Mot. to Dismiss Case, ¶ 3, ECF No. 148.

Upon notice of the 2020 tax refunds, the Trustee requested the Debtor turn over the tax refunds in accordance with the terms of the confirmed Chapter 13 Plan.[11] After much discussion between the Trustee and Debtor's counsel, the Trustee demanded that the amount due from the 2020 tax refunds was $2,070.01, calculated as follows:

Trustee's calculation re: amount of 2020 tax refund owed

| | |
|---|---|
| Overpayment to IRS for 2020 | $3,625.00 |
| Interest due on overpayment to IRS | 38.01 |
| State Refund | 207.00 |
| Less Exempt Stimulus Payment | (1,800.00) |
| **Net tax refund due Trustee** | **$2,070.01** |

The Trustee also demanded that the Debtor remit $802.28 to bring plan payments current and avoid dismissal of his case.[12]

At the January 12, 2022 hearing on Trustee's Motion to Dismiss,[13] Debtor's counsel argued that the Debtor should only be required to turn over funds received from the IRS and the OTC for 2020 *that he actually received*, calculated as follows:

Debtor's calculation re: amount of 2020 tax refund owed

| | |
|---|---|
| Overpayment to IRS for 2020 | $3,625.00 |
| Interest due on overpayment to IRS | 38.01 |
| State Refund | 207.00[14] |
| Amount offset by IRS for 2019 taxes | ( 771.74) |
| Less Exempt Stimulus Payment | (1,800.00) |
| **Net tax refund due Trustee** | **$1,298.27** |

---

[11] Chapter 13 Plan, Sec. 2.2, ECF No. 23.
[12] Trustee's Resp. to Debtor's Obj., ¶¶ 34-36, ECF No. 149.
[13] *See* Minute, Jan. 12, 2022, ECF No. 150. *See also* Debtor's Obj. to Trustee's Mot. to Dismiss Case, ECF No. 148.
[14] Debtor's counsel reported that Debtor had not received his 2020 OTC refund as of January 12, 2022.

Put another way, the Debtor argues that he should not be required to turn over the amount offset by the IRS for 2019 taxes because he did not receive those funds.[15] The Debtor also disputes Trustee's claim that his plan payments are delinquent in the amount suggested by the Trustee.

## Discussion

*Amount of Tax Refund Due Trustee.*

The Trustee posits three issues related to the amount of tax refund due: (1) the interpretation of the phrase "net tax refunds" in the Plan; (2) the impact of the parties' previous agreement to pay 2019 postpetition taxes owed to the IRS; and (3) whether dismissal is warranted for failure to turn over the 2020 tax refund. The first issue involves the meaning of "net tax refund" set forth in the Plan. The relevant Plan language is found in Section 2.2:

> Debtor(s) will timely file all required income tax returns and supply the Trustee with a complete copy (including all attachments) of each income tax return (both state and federal) filed during the Plan term within fourteen (14) days of filing the return and *will turn over to the Trustee all net income tax refunds, minus earned income tax credits, received during the Plan term.* Income tax refunds shall be paid to the Trustee in addition to the Plan payments stated above.[16]

The Trustee argues that "net tax refund" as defined by the Plan means the total refund calculated for a particular tax year less earned income tax credits. He claims no other offsets are allowed but offers no legal authority for his interpretation. Debtor, of course, argues that "net" means the amount actually paid to the Debtor since the Debtor cannot turn over what he did not receive.

The Court sees no ambiguity in the plan language. "Net" is commonly defined as that which is remaining after the deduction of all charges, outlay, or loss.[17] "Net income tax refunds" is determined first, and if applicable, a further deduction is made for an earned income tax credit. The use of commas around the phrase "minus earned income tax credits" means that a deduction

---

[15] Debtor's Obj. to Trustee's Mot. to Dismiss Case, ECF No. 148.
[16] Chapter 13 Plan, Sec. 2.2, ECF No. 23 (emphasis added).
[17] https://www.merriam-webster.com/dictionary/net.

for earned income tax credits modifies "net income tax refunds" and may be taken in addition to other offsets taken to arrive at the net refund amount. The Court does not believe that a debtor can turnover funds he did not receive. The Debtor has no power to stop the IRS from setting off tax liabilities from prior years against an overpayment.[18] That fact is recognized in the plan language which only requires that a debtor turn over the net refund received from taxing authorities. Therefore, the Court finds that the Debtor's calculations are correct, and that he is required to turn over $1,298.27 from his 2020 tax refunds from the IRS and OTC to the Trustee.

The second issue presented is whether the parties' previous agreement for the Debtor to pay $1,291 in monthly payments of $100 to the IRS for 2019 postpetition taxes requires Debtor to pay the entire amount due "irrespective of the plan language."[19] The Court finds that this agreement as to payment of the 2019 taxes is moot since the IRS offset any remaining amounts due. The 2019 taxes have been paid in full, partially through direct payments made by the Debtor pursuant to his agreement with the Trustee, and partially through offset of his 2020 refund by the IRS. The terms of this agreement do not state that the Debtor should pay the Trustee in lieu of the IRS. It simply states that the Debtor shall pay postpetition taxes for 2019 in monthly payments of $100 to the IRS and provide proof of such payments to the Trustee "until paid in full." The tax debt owed to the IRS has now been paid in full. There is no longer an obligation of the Debtor to continue to make payments to the IRS under this agreement.

The last issue raised is whether the Debtor's case should be dismissed for failure to turn over his 2020 tax refund. Debtor provided a cashier's check to his attorney in the amount of refund he believes he owes, and his attorney has provided proof of that check to the Trustee. The Debtor

---

[18] *See* 11 Collier on Bankruptcy P. TX5.08 (The IRS has virtually unlimited discretion regarding the setoff of tax liabilities against an overpayment.)
[19] Trustee's Resp. to Debtor's Obj., ¶ 27, ECF No. 149.

has not refused to turn over the tax refund in defiance of a term in the confirmed plan. The Court finds no material default justifying dismissal on this ground.

*Dismissal for Delinquency in Plan Payments.*

At the hearing on January 12, 2022, the parties disagreed regarding the amount the Debtor was behind in plan payments. Debtor's counsel reported that the Debtor had recently been hospitalized, was approximately half a payment delinquent, and was making progress in bringing his payments current. At this time, the Court declines to dismiss for delinquency or determine the amount needed for Debtor to pay to bring his plan payments current. The Court will continue the Motion to Dismiss regarding delinquent plan payments to the Chapter 13 docket on March 23, 2022.

## Conclusion

The Court declines to order the Debtor to turn over tax refunds he did not receive. The Court will continue the issue of dismissal on the grounds of delinquent plan payments for further hearing.

Accordingly,

IT IS THEREFORE ORDERED that the Trustee's Motion to Dismiss for failure to remit tax refund is denied.

IT IS FURTHER ORDERED that the Debtor shall remit $1,091.27 to the Trustee from his 2020 federal tax refund and $207.00 from his state tax refund by March 15, 2022. If Debtor has not received his state tax refund by that date, he shall inform the Trustee. The Debtor shall remit his 2020 state tax refund to the Trustee within seven days of receipt.

IT IS FURTHER ORDERED that the Trustee's Motion to Dismiss on the grounds of delinquent plan payments (Docket No. 139) is continued to March 23, 2022, at 2:00 p.m. for telephonic hearing. Call-in number 888-684-8852; access code 8488521; security code 1347.

###